# PHILIPSBORN COMPANY, INC., *vs.* SOLOMON FINEMAN.

*Action of Assumpsit—To Recover Cost of Making Curtains—
Prayers and Instructions—Assumption of Facts—
Warranty—Acceptance of Work.*

The exclusion of part of a letter offered in evidence is not prejudicial if the substance of the part excluded is shown by the part admitted. p. 197

In an action for the value of certain window draperies, a question whether the witness considered the fact that the draperies were held up in a certain way in order to allow a witness to testify as to the work thereon could give a proper impression to the jury as to the work, *held* leading, but its allowance not prejudicial. p. 197

In an action for the value of curtains made for defendant, a prayer submitted by defendant, assuming warranties as to the suitability of the material, and ignoring the fact that defendant selected the material, was properly refused. p. 197

In an action for the value of curtains made for defendant, defendant's prayer which predicated a verdict for defendant on a finding that the curtains did not hang properly, were awkward in appearance, and faded within an unreasonable time, *held* properly refused as assuming that these things were violations of the contract or of a warranty therein. pp. 197, 198

In an action for the value of curtains made for defendant, *held* that a prayer offered by defendant was defective as assuming that he had not accepted the curtains. p. 198

In an action for the value of curtains made for defendant, defendant's prayer that "under the circumstances," he was justified in not taking them down after plaintiff had hung them in his store, *held* defective as assuming "circumstances" without requiring jury to find them. p. 198

Defendant's prayer, predicated on plaintiff's failure, after defendant's selection of material, to inform defendant that the

material so selected was not suitable, *held* properly refused as assuming a warranty of the material, and as ignoring the question of the acceptance of the curtains.                    p. 198

In an action for the value of curtains made for defendant, plaintiff's prayer that defendant accepted the curtains if he retained them after a reasonable time without notifying plaintiff of their rejection by him, *held* erroneous as ignoring testimony that plaintiff promised to correct the defects, and that the delay in rejection might have been due to that promise.

p. 198

In an action for the value of curtains made for defendant, an instruction that plaintiff could recover the full contract price if the curtains were retained by defendant an unreasonable time, *held* erroneous as excluding any *right of recoupment* on defendant's part for breach of warranty.                    p. 198

In an action on the common counts for the value of window curtains, since the contract price could be recovered only if it did not exceed the real worth of the curtains as delivered, an instruction which failed to refer to alleged defects in the curtains, virtually telling the jury that the full contract price could be recovered if the curtains were retained an unreasonable time by defendant, was misleading and erroneous.     p. 199

*Decided April 17th, 1925.*

Appeal from the Superior Court of Baltimore City (Solter, J.).

Action by Solomon Fineman, trading as the Window Decorative Works, against the Philipsborn Company, Inc. From a judgment for plaintiff, defendant appeals. Reversed.

The prayers referred to in the opinion were as follows:

*Plaintiff's Third Prayer.*—The court instructs the jury that the defendant shall be deemed to have accepted the valances if they shall find that after a lapse of reasonable time, the defendant retained the valances without intimating to the plaintiff that it had rejected them, *and therefore, if they so find the defendant cannot set up as a defense any defects, or*

*imperfections visible upon inspection.*   (Granted as amended by the court; the amendment being in italics.)

*Defendant's A Prayer.*—The defendant prays the court to instruct the jury that if they find from the evidence that the curtains in question, the subject matter of this suit, were defective in their appearance because the material from which they were made was not suitable for such curtains, and that after being made they were awkward in appearance and failed to drape and hang properly, if they so find, and the said material faded within an unreasonable length of time, if they so find, the defendant had a right to reject the said curtains but if the jury should fail to find that the curtains were rejected within a reasonable time, by the defendant and the plaintiff was so notified and their verdict is for the plaintiff, then in arriving at the amount of their verdict, they are to take in consideration any and all defects, if they so find, in the appearance of the draperies after being made and whether or not they were suitable as made for the purpose for which they were ordered by the defendant with respect to their appearance and whether or not the said curtains should have faded during the time they were hanging at the window of the defendant's place of business and also the manner in which the said curtains were made, and determine what the value of the curtains were under the conditions above set forth after considering all of the evidence, and further that the court instructs the jury that under the law the plaintiff warranted to the defendant to make and provide the curtains in a good merchantable and workmanship manner, suitable for the purpose for which they were purchased, irrespective of any special guarantee.

*Defendant's First Prayer.*—The defendant prays the court to instruct the jury that if they find from the evidence that the draperies which are the subject matter of this suit, were ordered by the defendant to be used as ornamental decorations for the show windows of the defendant and that the said decorations did not hang properly but were awkward in their appearance, and faded within an unreasonable length of time, their verdict must be for the defendant, provided

the plaintiff had a reasonable opportunity to correct same and did not do so after being notified.

*Defendant's Second Prayer.*—The defendant prays the court to instruct the jury if they find from the evidence that the curtains or draperies, the subject of this suit, were hung by the plaintiff in the show windows of the defendant's place of business, and after being hung it was discovered that the folds were not uniform and badly draped, if they so find and that the panels were uneven in length and not straight, if they so find, and that the defendant notified the plaintiff of these conditions and the plaintiff, after a reasonable time, failed to alter or correct the conditions above stated, if they so find then the defendant is not bound to accept the said curtains or draperies and their verdict must be in favor of the defendant.

*Defendant's Third Prayer.*—The court instructs the jury that if they find from the evidence that the draperies mentioned in this suit failed to hang properly and were defective in their appearance and made from material that was not suitable, that it was the duty of the plaintiff to remove the said draperies within a reasonable time after being so requested by the defendant and that under the circumstances the defendant was justified in not taking them down until after it, the defendant, had despaired of all hope of the plaintiff removing them as requested.

*Defendant's Fourth Prayer.*—The defendant prays the court to instruct the jury that if they find from the evidence that the material used in the draperies, the subject matter of this suit, was selected by the defendant from swatches supplied by the plaintiff to the defendant and that the material which the plaintiff selected from the swatches was not such material as was suitable from which to make the said draperies, if they so find, and that the plaintiff failed to notify the defendant at the time the defendant selected the said material that it was not a suitable material to be used in making such curtains and that the said curtains failed to make up properly, their verdict must be for the defendant, provided they further find that the said materials were not

made to fold, drape and hang properly and faded within an unreasonable length of time.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Lewis W. Lake,* for the appellant.

*Simon E. Sobeloff,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

Solomon Fineman, plaintiff and appellee, in June, 1923, contracted with Philipsborn Company, Inc., the appellant, to make for it valances or window curtains for $250. They were to be made from a sketch furnished by appellant. The material was selected by Bertram S. Rice, president of Philipsborn Company, from swatches shown by Fineman. The curtains were hung on August 10th, 1923. Rice did not like the style, claiming that the curtains did not droop properly. Fineman's contention is that this was due to the material selected, and that as the matter of details was left to him, he made them as he thought best for that material. However, he took them down, and undertook to remake them by a sample procured by Rice from Murray K. Martin. On completion of one section, Fineman testifies, he hung it in Rice's office, and as it satisfied him, the order was completed and sent to be hung in the windows. This was about September 16th, 1923.

The curtains looked very satisfactory except two of them: "One or two were a little short and after I saw them up I stopped in the store and told them about it and said I would take it down and correct it, possibly two inches short. I heard nothing from them until some time in November when we sent them an invoice and statement to press them for payment of the bill and then we received a letter from Mr. Rice telling us the curtains were there without his sanction." The invoice was sent the day the curtains were hung the second time, and no complaint was made between that time

and October 1st, when a statement was sent; still there was no complaint; another statement was sent November 1st and there was no complaint, the first complaint being received November 6th, 1923, in a letter from Rice.

On cross-examination Fineman said he did not know how many times he was in defendant's store after September 18th, which was the last time curtains were hung, but was positive he stopped once; that "I noticed that the front piece was short and I knew he would not accept it that way. No one else would accept it that way"; that it was never fixed because defendant would not allow him to get it "although we sent for it"; that he told Mr. Oliver, defendant's window trimmer, that the curtain was short and to take it down and he would correct it, and sent up to get it; that the curtains were hung on rods and it would take about five minutes to take one section down; that the window was dressed, and he told them whenever they would take it down he would correct it.

Miss Paul, who made the curtains, testified that the material was "stubborn material." "It was not really suitable for that style of curtains. It was a good curtain for the valances but not for the drop they wanted. It was all right for the window but not for the drop they demanded on the second order"; that the first time she made them she had no specific instructions but went by the sketch and made them in the best manner possible, which was a perfect piece of work in that style, but they complained that the plaits did not drop enough and I explained why they could not. "I told him if he would get a sample I would make it like it, which he did. I remade the curtains and plaited it up according to that sample. No one else came to me personally with any complaints"; that in making the curtains she had not made them according to Mr. Oliver's ideas because it would look better the way she made it as it would not fall soft or in graceful folds.

Ferdinand Volkman, testifying for plaintiff, said Mr. Oliver of Philipsborn's was there when he hung them and

directed his attention to some things about the curtains which he objected to and that he recognized those conditions; that after plaintiff saw them he called witness up and told him to take them down; that the second time he hung them the same trouble existed, except that the plaits had been changed, but this did not overcome the complaints.

Bertram S. Rice, for defendant, testified that when plaintiff showed him the swatches, he did not say anything about the material not being suitable; that witness asked him if the material would make up curtains satisfactory and suitable for the windows and he answered "yes"; that he said that he could make them up "that way exactly as the drawing"; that when the curtains were put up the first time they were not festooned or draped properly according to the sketch but were straight plaits running straight across, which were entirely different from the drawing and he objected to the appearance, and Mr. Fineman said he would make them over according to the drawing, and he took them back and found he could not do it the way the drawing showed, and he agreed to have Murray K. Martin make a sample of the way it should be, and Philipsborn had the sample made at its expense and delivered it to Fineman and the curtains were taken away and brought back and hung a second time. At this point the curtains were shown to the jury as they were last hung, the witness pointing out the alleged imperfections. The witness further testified that he refused to accept them and the man was told not to hang them, but he insisted upon hanging them so that witness could pass on them after they were up; that after they were hung witness had his secretary get in touch with plaintiff immediately on the 'phone, who told him to come up so that he could see for himself, as the curtains were not satisfactory; that plaintiff "was to come up the following Monday but at four o'clock I had to go to New York. Fineman came up a couple of times during September. Unfortunately I was in New York and not there to see him. Evidently he got tired of coming and the matter rested"; that at the time the curtains were ordered the window was trimmed in blue and the curtains were to

match the carpet and witness wanted the blue to be fast
color, "and Fineman stated they were absolutely guaranteed
sun fast" and that under that condition witness ordered the
blue trimmings. Otherwise he would not have bought them
of blue, knowing the sun was strong.

At this point the correspondence between the parties was
introduced and the letters filed as exhibits, viz: letters of
Nov. 6th, 1923, from defendant to plaintiff; letter in reply
dated Nov. 8th, 1923, and a letter in reply to the last men-
tioned letter dated Nov. 10th, 1923.

The letter of Nov. 6th returns a bill and states that the
valances were put up in defendant's window without its
sanction, as the hanger was instructed to only hang a section;
that defendant does not want the curtains as they are botched
and unsatisfactory. Plaintiff is requested to call for the cur-
tains "as we will not keep same in the condition in which
they are." "As far as we are concerned the matter now
stands closed, as we intend to give out another order to some
one else who can do the work right."

Plaintiff's letter of Nov. 8th in reply denied that the val-
ances were hung without defendant's sanction and stated
that, on the contrary, plaintiff had received a 'phone call
from defendant urging that the curtains be hung, as defend-
ant was going to dress its windows; that if curtains did not
suit when they were hung defendant could have had them
taken down immediately instead of waiting seven weeks.

Defendant's letter of Nov. 10th states that plaintiff was
told as soon as curtains were hung that defendant did not
like the way they looked, "and you were supposed to call and
see the writer in regard to the matter. From what Mr.
Oliver, our window dresser tells us, you were up here a
couple of times both of which times the writer was out of
the city." "We do not intend to pay for this work, and we
will not keep the curtains as they are not made right"; "We
have asked you to call for them which you have refused to
do. The curtains were hung, and the job was never ap-
proved by us, and if you don't care to take them down as we

have requested you to, the curtains can hang in our windows, your property, as long as you choose."

The witness Rice was shown a photograph which he identified as having been taken after the curtains were hung. Witness further testified that he had been in the business twenty-six years, and during that time it was necessary for him to see that his windows were draped properly, and knows how curtains should hang; that these curtains were not on rods but were tacked up; that the curtains were eventually taken down by him.

On cross-examination witness said that plaintiff said the material was all right for curtains, but did not say it was best suited for that particular kind of curtain; that the curtains may have been taken down in August, 1924; that the curtains which were taken down at the time these curtains were put up had been there for ten years. John S. Oliver, testifying for defendant, said that he had been for fifteen years a window draper and was for eight years in the drapery business; that plaintiff asked him to show the man with plaintiff what was wrong, "and the man with him started to smile and said it was not necessary"; that the next time Mr. Volkman hung the curtains he told him "he was getting tired of putting them up, and that they were a botch and would be a botch forever and he was not going to put them up any more" (Volkman denied this on the stand); that plaintiff asked that the whole curtains be put up so that Mr. Rice could see them as a whole, which was done.

William L. Shaffer testified that he worked for Murray K. Martin and made the sample of the same material as the curtains; they were improperly made, and not like the sample. Lucile Gebb, an employee of defendant, testified that she heard the conversation between plaintiff and Rice with reference to the color, that the blue trimmings should be sunfast.

In rebuttal, plaintiff admitted that he guaranteed the material in the curtains to be sunfast, but denied that he guaranteed the blue trimmings to be sunfast; witness further testified that he did not tell Rice it was the best material for

that character of work, but said it would make up like the Austrian curtains.

This appeal is from a judgment in favor of plaintiff. There were two exceptions reserved to rulings on evidence and one to the ruling on the prayers. The first exception was to certain eliminations made by the court from letters offered in evidence. Most of the exclusions were proper. The only part cut out improperly was a statement that if plaintiff did not call for the curtains by a certain date defendant would do so and return them; but defendant was not prejudiced by this error, because a refusal to keep the curtains was clearly shown in other parts of the letter.

The second exception was to the overruling of defendant's objections to the following questions:

Do you consider the fact these draperies were held up by two people for the purpose of allowing the defendant's witness to testify as to the workmanship, in holding them up that way, do you think the proper impression could be given the court and jury or any one else as to whether that was a workmanlike job?

The objection should have been sustained, as it was clearly a leading question. But the error was not prejudicial.

Plaintiff's third prayer was granted and all of defendant's, five in number, were refused. The reporter is requested to set out all the prayers. We find no error in the refusal of defendant's prayers.

Defendant's A prayer assumes warranties as to the suitability of the material for a particular style of curtain and fastness of color, ignoring the fact that the material was selected by defendant. This is not a·case where the purchaser depended upon the knowledge and judgment of the seller. The testimony shows he had been familiar with draperies for many years. Besides the prayer is so involved that it would have been confusing to a jury.

Prayer No. 1 predicates a verdict for defendant on a finding that the curtains did not hang properly and were awkward in appearance and faded within an unreasonable time.

The prayer assumes that these things were violations of the contract or of a warranty therein.

Prayer No. 2 assumes a violation of contract and also assumes there has been no acceptance.

Prayer No. 3 assumes violation of contract and warranty of material. It also assumes "circumstances," without requiring the jury to find them.

Prayer No. 4 assumes warranty of material. Also ignores question of acceptance.

Besides, all of the prayers lack clearness and precision.

But there was prejudicial error in granting plaintiff's third prayer. The prayer was granted as amended by the court. The amendment is shown by the italicized words in parentheses. The prayer was incorrect both as originally offered and as amended. In its original form it entirely ignored the testimony in the case that plaintiff promised to correct the defects and that the delay in rejecting the curtains might have been due to that promise. It should have been qualified by a proviso presenting this question. As amended by the court the prayer virtually instructed the jury that if the curtains were retained by the defendant an unreasonable time plaintiff could recover the full contract price, even if the jury should find a breach of contract on his part.

It is contended by appellee that the prayer "merely covers the question of acceptance and nothing more," and that there is nothing in it instructing the jury that the plaintiff is relieved of any breach of warranty. But that prayer is the only granted prayer, and even if it could be held to be technically correct as a proposition of law (and it is not, because, if for no other reason, it excludes the right of recoupment) it would still be misleading to an extent that would be manifestly prejudicial. The function of a prayer is to so instruct the jury that it may intelligently apply the law to the facts in the particular case.

Appellee further contends that the exclusion of the right to recoupment was not prejudicial in this case, because defendant failed to show the diminished value of the curtains, by reason of any default on the part of plaintiff.

It is true there was no evidence of the money value of the curtains, allowing for the alleged defects, except the exhibition of the curtains and the pointing out of the defects to the jury.  If it were simply a question of recoupment *as a defense,* it would be necessary to decide whether such exhibition and explanation, without direct proof of money value, would alone be *any* evidence of value.  It would be going very far to say that it would not, as to a thing coming under the daily observation of laymen, and as to which the average layman could reach a reasonable conclusion from the facts presented.  What the jury, in passing on the question of recoupment, would have been required to do, was to determine the comparative value of the curtains with the defects, if they found any, with the curtains as they should have been under the contract.  But it is not necessary to decide the question here.

This suit was on the common counts and not on the contract.  The contract price was some evidence of value, and if the jury found the terms of the contract had been fully complied with by plaintiff, the contract price was the measure of damages; otherwise the measure of damages was the actual fair value of the curtains as delivered; and the contract price could be recovered only if it did not exceed the real worth of the curtains as delivered.  *Birdsall Company v. Palmer & Cockey,* 74 Md. 201; 1 *Poe, Pl. & Pr.* (4th ed.), sec. 101.  The granted prayer would not naturally convey such an impression to the jury and was therefore misleading to say the least.  For the error in granting plaintiff's third prayer the judgment must be reversed.

*Judgment reversed and new trial awarded,*
*with costs to appellant.*